**STAFFORD v CENTRAL GREYHOUND LINES, INC. et**

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5815. Decided July 15, 1940.

DeCamp, Sutphin & Brumleve, Cincinnati, and Dudley, Stowe & Sawyer, for Fannie B. Stafford.

Tallentire & Barbour, Cincinnati; William R. Meier, Cincinnati; Taft, Stettinius & Hollister, Cincinnati; John Clippinger, Cincinnati, and John Hudson, Cincinnati, for Central Greyhound Lines, Inc.

Pogue, Hoffheimer & Pogue, Cincinnati; James A. Culbertson, Cincinnati; Dinsmore, Shohl & Sawyer, Cincinnati, and Richard Todd, Cincinnati, for Adele G. Bishopric, Executrix.

**OPINION**

By ROSS, J.

Appeal on questions of law from the Common Pleas Court of Hamilton County. The plaintiff brought suit against the Central Greyhound Lines, Inc., and the estate of Allison Bishopric, charging that by reason of the joint negligence of the bus company and Allison Bishopric, she, who was a passenger in a Greyhound bus, was seriously injured when such bus, having been struck by an automobile driven by Allison Bishopric, was caused to overturn.

The action was predicated upon a charge of joint and concurrent negli-

gence of the bus company and Bishopric.

The usual claims of speed and failure to keep a proper lookout were made against each of those claimed to be responsible for plaintiff's injuries.

The collision was alleged to have occurred in Indiana, at an intersection of Route 20, upon which the bus was proceeding eastwardly and Route 15, upon which Bishopric was proceeding northwardly.

The claim against the estate of Bishopric, who was killed in the collision, was based upon the wrongful death statute in Indiana, which limited such actions against estates of tort feasors to $1000.00.

The liability of the bus company was claimed to be that of a common carrier of passengers, the plaintiff alleging that she was such on August 31st, 1937, at 10:30 A. M., when the collision occurred.

Seasonable objection was made by the bus company to the misjoinder of the defendants. The trial court ruled against the bus company.

That the defendants having entirely different sources of liability and limitations of liability cannot be sued as joint tort feasors seems to be most apparent in this action. However, my associates do not concur in this conclusion, and the ruling of this court is, therefore, adverse to the ██ contention of the bus company on this assignment of error.

The Bishopric estate withdrew its appeal, so that the attention of the court is now directed to the further claims of error of the defendant-appellant, the Greyhound Bus Company.

The first of these is that the evidence fails to disclose any negligence which was the proximate cause of the plaintiff's injuries.

The plaintiff relies principally on claims that there is evidence showing that the bus was proceeding at an unreasonable speed across the intersection and that the driver of the bus failed to keep a proper lookout after entering the intersection.

The driver of the bus was called by the plaintiff on cross-examination. He testified that was proceeding at a speed of some fifty miles an hour as he approached the intersection, that he sounded his horn as he neared it, in order to notify prospective passengers of the approach of the bus, and brought the bus speed down to twenty-five or thirty miles and hour, as he proceeded into the intersection.

Another witness for the plaintiff, who with his wife were passengers on the bus, she having lost her life in the collision, testified the bus in his opinion at the time of the impact was proceeding at a speed of fifty miles an hour.

Two witnesses for the defendant bus company, who were riding on a truck passing through the intersection at the time of the collision, testified the bus was traveling at the rate of thirty to thirty-five miles an hour as it neared the intersection and slowing down.

The speed of the Bishopric machine was given as seventy-five miles per hour by a number of witnesses.

Beyond all this, however, is the mute evidence given by the vehicles themselves after the collision.

The bus was one of the large type used by the defendant bus company and contained some forty persons. The front end of the bus was sheared off, it was turned completely around and upset on its top, so that the wheels were uppermost. The left side of the Bishopric car was demolished. After striking the bus very close to the front, the Bishopric car glanced off and finnally was arrested by some stone steps in front of a church some two hundred feet away from the point of impact. It is perfectly obvious that the Bishopric machine was proceeding at a very high rate of speed, and that in view of the fact that the bus was stopped almost instantly in its tracks and turned over, that considering its weight and load, it could not have been traveling at any unreasonable speed.

Upon the claim of negligence due to the speed of the bus, we ██ are compelled to find that there is in the record no

substantial evidence sustaining this contention, and that on the contrary the evidence is conclusive that the bus was proceeding at an entirely reasonable speed in view of the fact that Route 20, on which the bus was proceeding, is a preferential highway, and that the Bishopric car was traveling at such a high rate of speed as to eliminate any other factor as a proximate cause of the collision.

As to the second claim that the driver of the bus did not keep a proper lookout after entering the intersection, certain facts and factors must be kept in mind.

Route 20, as has been previously said is a preferential highway, that is, vehicles proceeding over it have the preference over vehicles crossing it. The Indiana law does not give to such vehicles on the preferential highway the absolute right of way conceded vehicles on such highways in Ohio, but it is understood that vehicles passing along the preferential highway may consider that drivers of vehicles upon intersecting highways will concede such right of way.

Route 15 is marked and was known by the bus driver to be clearly marked by warning signs placed at considerable distance from the interesection of Route 15 with Route 20. At a distance of some 600 feet from the intersection there was a "Slow" sign, at a distance of some 350 feet a "Junction" sign, and at a distance of some 100 feet a "Stop" sign. The corners of the intersection are curved in such a manner as to permit an extended view from Route 20 down Route 15. A filling station and some outbuildings partially obscured this, but still the view was unobstructed for some 1000 feet. Route 15 dips as it approaches Route 20, and comes into Route 20 at a slight grade. This fact again does not prohibit a view down Route 15 for quite a considerable distance.

The driver of the bus glanced down Route 15, as he entered the intersection, and saw nothing to cause him to stop his vehicle. The Bishopric car was not visible. The driver of the bus did not again look until the Bishopric car was directly upon him.

Even if he had seen the Bishopric car approaching, he would certainly have had a perfect right to consider that such car would have obeyed the warning signs and conceded him the right of way, even though such right was only a preferential one. To say that he should have stopped would be to entirely ignore the value of the "Slow". "Junction", and "Stop", signs.

Again, we find there was nothing the driver of the bus should have done (even recognizing that he owed the passengers the highest degree of care), which any reasonable person would do under similar circumstances, which he did not do.

So finding, it is our conclusion that the trial court should have instructed a verdict for the defendant, Central Greyhound Lines, Inc., and we now authorize such judgment to be entered.

The judgment as to the Bishopric estate is affirmed.

HAMILTON, PJ. and MATTHEWS, J., concur.